STATE OF IOWA, Appellee, v. HENRY TONN, Appellant.

CRIMINAL LAW: Appeal—Transcript at Expense of County. An
order that a defendant in a criminal case be furnished a transcript
at the expense of the county, made on a full showing that defendant
was impecunious, must not be set aside on an application for per-
mission to examine in a foreign state certain officers of an organ-
ization to which defendant belongs, on the claim that the said or-
ganization is able to pay for said transcript, when it already ap-
pears that said organization is under no legal obligation to pay for
said transcript. (Sec. 254-a2, Suppl. Supp., 1915).

*Appeal from Linn District Court.*—MILO P. SMITH, Judge.

DECEMBER 20, 1920.

THE defendant was indicted, tried, and convicted of the
crime of conspiracy to commit criminal syndicalism, under
Chapter 382, Acts of the Thirty-Eighth General Assembly. He
was sentenced, March 2, 1920, for an indeterminate period, not
exceeding three years, in the penitentiary at Fort Madison. On
the same day, defendant perfected an appeal to the Supreme
Court, and made an application and showing, under oath, that
he was without means to pay for a transcript of the evidence.
This application was resisted by the county attorney. By an
amendment to the resistance, the county attorney asked that
the court be furnished with certain information as to the amount
of available funds in the defense fund of the I. W. W., an or-
ganization to which defendant belonged, and other matters of
that nature. The court made an order, as requested; and there-
after, an affidavit by W. D. Haywood, secretary of the defense
committee of such organization, was made and sworn to in
Cook County, Illinois, setting out at considerable length the
matters referred to in the order. Thereafter, and on April 21,
1920, the court, after a full hearing, made an order, based upon
the showing made by the defendant, that the transcript be made
at the expense of Linn County, Iowa. On May 18th thereafter,
the county attorney made an application to set aside the order

of April 21st, and in the application asked for an order from the
court to require the party in Chicago who made the affidavit
before referred to, to appear for cross-examination upon said
affidavit, and to produce any books and papers designated by
the county attorney to properly cross-examine said affiant; or,
in the event that said affiant should refuse. to appear before
the district court, that he be required to submit to cross-examina-
tion in the city of Chicago, at such time and place as the county
attorney in this case should designate; and that he be ordered
to then and there produce any books and papers deemed neces-
sary, and designated by the county attorney, for the purpose
of said cross-examination.    The said motion was sustained on
the same day, and the order of April 21st was vacated, and the
order for cross-examination was granted, as prayed.    The State
did not ask to cross-examine the defendant upon his affidavit.
On July 21st thereafter, the defendant filed a motion to set
aside and vacate the order of May 18th, which was overruled
on July 19th.    The defendant has appealed from the order of the
court of July 19th and the order of May 18th, which last vacated
the order of April 21st.—*Reversed.*

*H. O. Mulks,* for appellant.

*H. M. Havner,* Attorney General, *B. J. Powers,* Assistant
Attorney General, and *H. K. Lockwood,* County Attorney, for
appellee.

PRESTON, J.—The effect of the ruling of the trial court in
overruling, on July 19th, defendant's motion to vacate the order
of May 18th, setting aside the order of April 21st, is to leave
the defendant's application for an order that the transcript be
furnished at the expense of the county, still pending.    It has
been pending since March 2, 1920, if the subsequent rulings are
to stand.    It is unnecessary for us to pass upon the question as
to the validity of the court's order requiring the maker of the
affidavit to appear for cross-examination, or, in the event of a
failure so to do, to appear before the Linn County county attor-
ney at Chicago, at such time as the county attorney should desig-
nate, and produce books and papers of a person who was not

a party to this proceeding. It seems to be conceded, as of course it must be, that the court could not compel a nonresident of the state to appear in Iowa. All that *State v. Bitter Root Val. Irr. Co.*, 185 Iowa 60, cited by the State, holds, is that, under the circumstances of that case, there was no abuse of the discretion in the trial court in refusing to make an order compelling the appearance of nonresident affiants for cross-examination. The remainder of the order requiring such person to appear before the county attorney in Chicago, and produce books and papers, is, to say the least, somewhat broad. No time is fixed, and, under such order, the county attorney could, if so disposed, defer the examination until defendant's term of imprisonment had expired. Counsel for appellant suggests that the effect of the order would be to appoint the county attorney a judge in Chicago, to pass upon questions as to what books and papers should be produced, and to control the extent of the examination. But, as said, we think it is unnecessary to go into this. The original application of the defendant was in due form, and supported by his own oath, and, to some extent, by the showing of the secretary of the association in Chicago.

It appears that the defendant was without means to pay for such transcript. It is thought by the State that the party making the affidavit was somewhat evasive therein. The affidavit was to the general effect that, though defendant was a member, the defense fund, because of many prosecutions, was depleted, and that the organization could not and would not furnish any funds to pay for the transcript of the evidence in this case. As we understand it, the association did pay defendant's attorney for defending in the district court. We assume that this was paid voluntarily. At least, there is no showing that the association was under any obligation to pay. It appears that defendant has no control whatever over the organization or its funds, and no power to compel the organization to pay for a transcript. As to this last feature, then, the case stands as in *State v. Wright*, 111 Iowa 621, where it was held that the fact that a defendant has relatives or friends who were financially responsible is no ground for denying an application such as this, since there is no obligation upon their part to render financial assistance. The trial court had all these matters before

it at the time the order of April 21st was made. Defendant brought himself clearly within the provisions of the statute. The showing was sufficient, and that order was properly made. It would have been error to refuse it. *State v. Wright*, supra; *State v. Robbins*, 106 Iowa 688; *State v. Harris*, 151 Iowa 234; *State v. Adams*, (Iowa) 133 N. W. 706 (not officially reported); *State v. Goodsell*, 136 Iowa 445.

The burden was, then, upon the State to show that the first order was improperly made. It attempted to show that the defendant had, or could secure, funds. The showing by the State was by an unverified motion. As before stated, it asks for an order for the appearance of the maker of the affidavit for cross-examination, and states further that the State is informed as to the number of members of the organization to which defendant belonged, and states that from such a large membership there must be a large fund collected by the sale of defense stamps, and that the State has reason to believe that, if permission is given to cross-examine the said Haywood and any necessary books and records of the organization, the falsity of any statements made in the affidavit will be shown. No other showing was made. We think this was entirely insufficient to justify the setting aside of the order theretofore made.

The statute under which defendant was indicted provides, in part:

"Criminal syndicalism is the doctrine which advocates crime, sabotage, violence or other unlawful methods of terrorism as a means of accomplishing industrial or political reform. The advocacy of such doctrine, whether by word of mouth or writing, is a felony punishable as in this act otherwise provided."

The argument for the State is, in substance, that, because of the nature of the charge, the character of the organization to which defendant belongs, and the notoriety of the person making the affidavit in Chicago, the paper application and paper affidavit, as they put it, should not be taken at their face value; and that, under the circumstances of this case, the showing of defendant's inability to pay for the transcript should be clear and convincing. True, as contended by the State, the trial court had seen the defendant as a witness in the trial of the case, if he testified, and defendant had been convicted. Such is the

situation in every case where such an application is made. Possibly some of the matters referred to should be considered as bearing upon the credibility of the witnesses. The trouble is that there is no substantial dispute in the showing made by the defendant on the vital point as to whether he is able to pay for the transcript. If he is not able, as appears from the showing, the county should pay, to the end that defendant may not be deprived of his right of appeal. Counsel for the State do concede, however, as they should, that these circumstances should not prevent defendant from having a fair and impartial trial, and a review in this court. It may be true, as suggested,—at least inferentially,—that defendant was seeking to destroy the very law that protects him. He may be misguided, or the dupe of higher-ups, and without appreciation of our laws and our institutions. The courts have no sympathy with crime, whatever the charge may be. They should, however, above all things, maintain their poise and balance, and see to it that, in every case and under all circumstances, every person charged with crime be tried according to the forms of law, and that every right guaranteed by the Constitution and the law be accorded. Thus will the law be strengthened. It is well enough to prosecute vigorously, and, after legal conviction, mete out punishment commensurate with the offense; but the prosecution and conviction ought to be and must be according to the rules.

We think the court erred in the rulings complained of. They are reversed, and the cause is remanded, with directions to overrule the State's application to vacate the order of April 21st, which will leave such first order as it was when granted.— *Reversed and remanded.*

WEAVER, C. J., EVANS and SALINGER, JJ., concur.