STATE OF IOWA v. WESLEY SHAFFER, Appellant.

**Criminal law:** TRANSCRIPT AT EXPENSE OF COUNTY: APPEAL. An order denying a defendant a transcript of the evidence at the expense of the county is appealable.

**Same:** VOLUNTARY CONVEYANCE OF PROPERTY: EVIDENCE. A defend-
ant possessed of ample means, but who just prior to the trial
voluntarily conveyed his property to his wife and children, is
not entitled to a transcript at the expense of the county. Evi-
dence held insufficient to show that the conveyance was in
good faith.

*Appeal from Linn District Court.*— HON. MILO P. SMITH,
Judge.

FRIDAY, JANUARY 17, 1908.

DEFENDANT, having been convicted of murder in the
first degree, perfected his appeal to this court, and then ap-
plied to the district court for a transcript of the evidence
adduced on the trial at the expense of the county. In sup-
port thereof was his affidavit to the effect that he was with-
out money or means of any kind. On the other hand, the
State filed the affidavit of the county attorney, denying that
the defendant was without means, and stating that at the time
of his arrest he was owner of forty-six acres of land, forty
of which was exempt from execution, of the value of $3,500,
and considerable personal property, and that thereafter,
August 13, 1906, he executed a voluntary conveyance thereof
to one Green as trustee, with direction to sell the same,
and, after paying a small indebtedness, divide the remainder
among his children, and that none of said real estate had
been sold. Thereupon the attorney appointed to defend
in the district court filed an affidavit that he had made
thorough investigation of the facts, and that as he had been
informed, and verily believed, the property in great part
had been earned by the wife and children of defendant, and
was considered the property of his wife; " that defendant's
wife had continually worked on the farm and conducted
the same and earned the same, and the same was always
considered by herself and by the defendant as her property;
that at the time of his said arrest his children and sons de-
manded that he convey the said property to the said chil-

dren as the heirs of their said mother, and, the same being in fact and in law the property of the said heirs, he did, therefore, make such deed, and for that reason and purpose only; that he was and is unable to regain said property, as the same is not his property; that he has no property whatsoever as alleged in his original affidavit; that said forty acres so standing in his name was not worth the sum of $3,500, but not to exceed $2,400, and was not fully paid for. He further says that said property is not available to this defendant, and that he is unable to procure one cent of it from the said Green." The transcript of a justice of the peace showing that information was filed and defendant waived preliminary examination August 8, 1906, and the deed to Green, were introduced in evidence. The court entered an order refusing a transcript at the county's expense. The defendant appeals.— *Affirmed.*

*Don Barnes* and *Barnes & Chamberlain,* for appellant.

*H. W. Byers, Attorney General,* and *Chas. W. Lyon, Assistant Attorney General,* for the State.

LADD, C. J.— The rule may be regarded as settled in this State, though by a divided court, that any person convicted of crime who has taken an appeal to this court, and is without means to pay therefor, unless he has voluntarily placed himself in that situation, is entitled to appeal from an order denying a transcript of the evidence adduced upon his trial at the expense of the county. *State v. Robbins,* 106 Iowa, 692; *State v. Wright,* 111 Iowa, 622; *State v. Stiedley,* 133 Iowa, 31; *State v. Goodsell,* 136 Ia., 445.

1. CRIMINAL LAW: transcript at expense of county: appeal.

The defendant, when arrested, was possessed of ample means with which to make defense, but within five days thereafter conveyed all his property to a trustee, with authority to " control the same, and if necessary, sell both the personal

and real property for the payment of just debts, including
2. SAME: volun-     the note referred to in the body of this deed
tary convey-
ance of          ($300 owing of purchase price), using for
property:
evidence.          such purposes the personal property first,
and, if that be not sufficient, the real estate or so much
thereof as may be necessary to complete said payments,"
the surplus to be divided among his children, share and share
alike.  This deed was not made because of any legal obliga-
tion so to do; but, if the information of his attorney is to
be relied on, it was because the wife and children had
earned the property. How this was accomplished is not
explained, and, for all that appears, it was by the rendition
of such services as were owing the husband and father by
virtue of that relationship. Moreover, the affidavit is on
information, without giving the source, and is mere hear-
say. The showing was not sufficient to indicate a moral con-
sideration even, and the deed must be regarded as purely
voluntary. As the property, after the satisfaction of all
debts, was worth between $2,000 and $3,500, we have to
inquire whether a person who has voluntarily dispossessed
himself of the means necessary for his defense is in a
situation to invoke the benefit of the statute, providing that,
if he " shall satisfy a judge of the district court from which
the appeal is taken that he is unable to pay for a transcript
of the evidence, such judge may order the same made at the
expense of the county where said defendant was tried."

Such is the benevolence of the law that a pauper even
cannot for want of funds be deprived of the same review
of the proceedings against him in the court of last resort
as is accorded his more fortunate neighbor; and this to the
end that justice shall ever be administered " equally to the
rich and the poor." But this does not mean that one who
voluntarily makes of himself a pauper, and thereby pur-
posely deprives himself of the means necessary to meet the
expenses of his defense, can avail himself of this gratuity.
Doing so subsequent to formal accusation is indicative of

bad faith, and, when unexplained, is evidence of the fraudulent purpose of avoiding his own proper expenses by saddling them on the county. Ordinarily good faith on the part of such an applicant is to be presumed and the statute proceeds on this theory; but it does not follow that the beneficence provided for the protection of the indigent can be made to serve as a reward for trickery and fraud in becoming such. If possessed of means ample to meet the expenses of conducting his defense subsequent to the formal accusation in court, this condition is presumed to continue until the contrary appears, and is not met by proof of a purely voluntary transfer thereof under circumstances indicating bad faith with the State. The law abhors fraud, and will not bestow its bounty even for the protection of one accused of crime, unless the applicant comes into court with clean hands. He may be without present means, but, if so, the record is such as to warrant the conclusion that he voluntarily put himself in that situation for the very purpose of casting the burden of his defense on the county, and, this being so, the court rightly adjudged that such conduct estopped him from claiming the benefit of the statute, and that he ought not to be assisted at the expense of the public.— *Affirmed.*